IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 7:17-CV-96-FL

| | |
|---|---|
| UNITED PROPERTY & CASUALTY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> JEFFREY SURPRENANT, JILL SURPRENANT, TABITHA MOSELEY, as guardian ad litem for K.M., TABITHA MOSELEY, individually, and JAMES MOSELEY, <br><br> Defendants. | ORDER |

This matter is before the court on plaintiff's motion for summary judgment (DE 60), and motions for summary judgment by defendants Tabitha Moseley, James Moseley, and K.M. (collectively "defendants") (DE 58).[1] The issues raised have been fully briefed and are ripe for adjudication. For the reasons that follow, the court grants plaintiff's motion for summary judgment, and denies defendants' motions for summary judgment.

**STATEMENT OF THE CASE**

On May 17, 2016, plaintiff filed this diversity action alleging that defendants Jill Surprenant and Jeffrey Surprenant (together, "Homeowner Defendants" or "Surprenants") committed material misrepresentation and fraud in their application for homeowners insurance. Specifically, plaintiff contends that Homeowner Defendants failed to disclose that they had a dangerous dog when they

---

[1]Defendants Jill Surprenant and Jeffrey Surprenant have not joined defendants' motions for summary judgment.

applied for a homeowners insurance policy (hereinafter "Insurance Policy"); plaintiff would not have issued the Insurance Policy for the Homeowner Defendants if they had disclosed having such a dog; and that because Homeowner Defendants failed to disclose they had such a dog, plaintiff is not liable for injuries sustained by defendants due to the Homeowner Defendants' dog. (Compl. ¶¶ 23-30). Plaintiff seeks a declaratory judgment holding Homeowner Defendants' Insurance Policy unenforceable for defendants' injuries. (Id. at 5).

Homeowner Defendants previously filed a motion to dismiss plaintiff's complaint for failure to state a claim, which the court denied by text order dated March 1, 2018. Defendants filed their initial answer to the complaint on June 9, 2017, and filed an amended answer with leave of court on March 22, 2018. Defendants demand a jury trial. Pursuant to the court's case management order, discovery was completed January 1, 2018.

Plaintiff filed the instant motion for summary judgment on January 19, 2018 (DE 60), on the basis that Homeowner Defendants made material and fraudulent misrepresentations upon applying for homeowner's insurance, and plaintiff did not have knowledge of the misrepresentations made by Homeowner Defendants. For these reasons, plaintiff argues that it is not required to insure Homeowner Defendants for injuries caused to defendants. In support of its motion, plaintiff relies upon a statement of material facts and the following documents: 1) Examination Under Oath of Jull Surprenant (DE 61-1), 2) Deposition of Holly Angermeier (DE 61-2), 3) Examination Under Oath of Jeffrey Surprenant (DE 61-3), 4) Angermeier Memorandum (DE 61-4), 5) Email Correspondance (DE 61-5), 6) United Property & Casualty Insurance Company ("UPC") Animal Liability Underwriting Guidelines (DE 61-6), 7) UPC Insurance Application executed by Jeffrey Suprenant (DE 61-7) (hereinafter, the "Application"), 8) Affidavit of Holly Angermeier (DE 61-8), 9) National Risk Services ("NRS") Inspection Report (DE 61-9) (hereinafter "Inspection Report"), 10)

Designation of Experts (DE 61-10).

Defendants filed their motions for summary judgment on the same date (DE 58), arguing that Homeowner Defendants' Insurance Policy was not voided by material misrepresentations because 1) the representations made in Application with respect to owning a dog were true at the time they were made, 2) there is no duty on the part of an insured to amend answers in their Application, and 3) the representations made in the Application are not applicable to the policy in effect at the time of the injury. Defendants also argue that plaintiff waived its right to void the policy because plaintiff's agent knew of Homeowner Defendants' statements and that knowledge is imputed to the plaintiff, and plaintiff also waived its right to challenge Homeowner Defendants' statements when it issued new policies each year.

In support of their motions, defendants rely upon a statement of material facts and several of the same documents plaintiff relies upon, including the examinations of Jill Suprenant and Jeffrey Surprenant, the deposition and affidavit of Holly Angermeier, the Application, and the Inspection Report. In addition, they rely upon 1) an October 28, 2013, Computer Note (DE 59-3), 2) an Angermeier-Surprenant email (DE 59-5), 3) UPC Homeowners Insurance Binder (DE 59-7), 4) Renewal Declarations (DE 59-9), 5) UPC Insurance Policy (DE 59-10), 6) UPC Insurance Policy Signature Page (DE 59-11), 7) Expert Witness Report (DE 59-13), 8) Affidavit of David Miller (DE 59-14), and 9) UPC Animal Liability Endorsement (DE 59-15).

## STATEMENT OF UNDISPUTED FACTS

The undisputed facts may be summarized as follows. In October 2013, the Surprenants were residents of Massachusetts and were purchasing a house at 107 Weir Drive, Hampstead, North Carolina. (Examination Under Oath of Jill Surprenant (DE 59-1, 61-1) at 6:10-7:21). The house had not yet been constructed and the Surprenants did not plan on moving into the completed house

3

for about a year. (Examination Under Oath of Jeffrey Surprenant (DE 59-2, 61-3) at 29:7-20). The Surprenants contacted Don Bullard Insurance Agency for homeowners insurance for the new house. Holly Angermeier ("Angermeier"), an employee of Don Bullard Insurance Agency, worked with the Surprenants to obtain their Insurance Policy. (Examination Under Oath of Jill Surprenant (DE 59-1, 61-1) at 7:20-8:8; Deposition of Holly Angermeier (DE 59-4, 61-2) at 23:3-15, 30:17-21). Pursuant to her standard practice and the underwriting guidelines of several insurance companies, including UPC, Angermeier asked the Surprenants questions regarding their qualifications for homeowner's insurance, including any animals they owned. (Deposition of Holly Angermeier (DE 59-4, 61-2) at 18:14-19:21).

At that time, the Surprenants owned an American Mastiff dog named Winston and told Angermeier about the dog in response to her questions. (Examination Under Oath of Jill Surprenant (DE 59-1, 61-1) at 6:15-16, 9:6-13, 13:3-4). On October 24, 2013, Angermeier wrote a note in the computer system of the Don Bullard Agency regarding homeowner insurance which said "no pool tramp dog American mastiff?? - ok with Bankers." (Computer Note (DE 59-3, 61-4)). On October 28, 2013, Angermeier sent Jill Surprenant an email saying "I have attached revised quote for your HO quote. I had to go with another company because of your breed of dog." (Angermeier-Surprenant email (DE 59-5, 61-5) at 1). Defendant Jill Surprenant responded by email, saying "we are going to take our chance with the first company please. We won't be moving the dog down there for another year, plus he is old and may only live another year or two. He definitely won't be there during any inspection." (Angermeier-Surprenant email (DE 59-5, 61-5) at 1).

Based on the information provided by the Surprenants, Angermeier filled out the UPC Homeowners Application and provided it to the Surprenants for their signature. (Application for Insurance (DE 59-6, 61-7)); Deposition of Holly Angermeier (DE 59-4, 61-2) at 42:15-24).

4

Angermeier completed the "Prequalification Questions" in the Homeowner's Application, including answering "No" in response to question 8, "are there any vicious, dangerous, or exotic animals, dangerous breeds of dogs owned or kept by any insured or tenant?" (Application for Insurance (DE 59-6, 61-7) at 3). The Surprenants were able to read and write, and Jeffrey Surprenant signed the Homeowners Application. (Examination Under Oath of Jill Surprenant (DE 59-1, 61-1) at 25:20-24; Examination Under Oath of Jeffrey Surprenant (DE 59-2, 61-3) at 11:2-5, 12:5-7, 14:23-25, 19:22-23)).

After receiving Homeowner Defendants' Application, plaintiff issued their Insurance Policy, effective October 27, 2013 to October 27, 2014. (UPC Insurance Policy (DE 59-10)). National Risk Services performed an inspection of the house on December 17, 2013. (Inspection Report (DE 59-8, 61-9)). The inspection noted no dogs were observed. (Inspection Report (DE 59-8, 61-9)). In April 2014, Homeowner Defendants, along with Winston, moved into their new home. (Examination Under Oath of Jill Surprenant (DE 59-1, 61-1) at 16:4-20). Plaintiff subsequently renewed Homeowners Defendants' Insurance Policy each year from 2014-2015, 2015-2016, and 2016-2017. (Renewal Declarations (DE 59-9); UPC Insurance Policy (DE 59-10)).

On February 19, 2016, defendant K.M., her two sisters, and her mother defendant Tabitha Moseley were visiting the Surprenants when Winston bit defendant K.M. in the face, causing her to seek medical treatment at New Hanover Regional Medical Center. (Examination Under Oath of Jill Surprenant (DE 59-1, 61-1) at 32:10-33:3, 33:23-25)). Defendants made a liability claim against the Surprenants and plaintiff under Homeowner Defendants' Insurance Policy. (Statement of Material Facts (DE 62, 67) ¶ 24).

**DISCUSSION**

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability,

. . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.  Analysis

   1.  Material Misrepresentation

"All statements or descriptions in any application for a policy of insurance, or in the policy itself, shall be deemed representations and not warranties, and a representation, unless material or fraudulent, will not prevent a recovery on the policy." N.C. Gen. Stat. § 58-3-10. Consequently, an insurer is not bound by an insurance policy if the insured made material or fraudulent misrepresentations in the application for that policy.[2] Id.; N. Nat'l Life Ins. Co. v. Lacy J. Miller Mach. Co., Inc., 311 N.C. 62, 70–71 (1984). To prove material misrepresentation, a party must show 1) that the statement was false, and 2) that the statement was material. See N. Nat'l Life Ins. Co., 311 N.C. at 71; Bell v. Nationwide Ins. Co., 146 N.C. App. 725, 726 (2001). A misrepresentation is material if "the knowledge or ignorance of it would naturally influence the judgment of the insurer in making the contract, or in estimating the degree and character of the risk, or in fixing the premium." Goodwin v. Investors Life Ins. Co. of N. Am., 332 N.C. 326, 331 (1992)

---

[2]Because it is dispositive regarding the issue of waiver, the court addresses fraud in the subsequent section.

7

(internal quotation marks omitted).

Where a party signs an application for insurance prepared by another person, the representations made in the insurance application are adopted as his or her own. Id. at 330-31 (citing Jones v. Insurance Co., 254 N.C. 407, 413 (1961)); see also Luther v. Seawell, 191 N.C. App. 139, 145 (2008) (internal citations omitted). Moreover, a material misrepresentation avoids a policy "even though the assured be innocent of fraud or an intent to deceive or to wrongfully induce the assurer to act, or whether the statement [be] made in ignorance or good faith, or unintentionally." Thomas-Yelverton Co. v. State Capital Life Ins. Co., 238 N.C. 278, 282 (1953) (internal quotations omitted); see Tharrington v. Sturdivant Life Ins. Co., 115 N.C. App. 123, 128 (1994).

Viewing the facts in the light most favorable to defendants, Homeowner Defendants committed a material misrepresentation in their Application. The prequalification questions in the Application asked Homeowner Defendants in question 8 "are there any vicious, dangerous, or exotic animals, dangerous breeds of dogs owned or kept by any insured or tenant?" and referred applicants to the UPC Animal Liability Underwriting Guidelines ((DE 59-6, 61-7) at 3). The UPC Animal Liability Underwriting Guidelines list "Mastiff (all variations)" as "dangerous per se." ((DE 61-6) at 1). Homeowner Defendants owned Winston at the time that they completed their Application. (Examination Under Oath of Jill Surprenant (DE 59-1, 61-1) at 9:6-15, 12:5-25, 13:1-10). They were advised by Angermeier that owning a mastiff made them ineligible for plaintiff's homeowners insurance. (Angermeier-Surprenant Email (DE 59-5, 61-5) at 1). By answering "No" to question 8 on the Application, Homeowner Defendants thus made a false statement.

Additionally, the statement was material because plaintiff would not have insured Homeowner Defendants if it had known they owned Winston. Plaintiff's Animal Liability Underwriting Guidelines state "UPC Insurance deems [Mastiffs of any variation] as dangerous per

8

se (due to temperament, strength/musculature, and/or size), <u>thereby rendering the risk ineligible to receive coverage under any circumstances.</u>" (Animal Liability Underwriting Guidelines (DE 61-6) at 1; Deposition of Holly Angermeier (DE 59-4, 61-2) at 34:10-35:1) (emphasis added). Plaintiff's guidelines show that Homeowner Defendants' representation in their Application prevented plaintiff from "estimating the degree and character of the risk" before issuing Homeowner Defendants' Insurance Policy. Goodwin, 332 N.C. at 331. Consequently, Homeowner Defendants made a material misrepresentation.

Defendants present several arguments as to why Homeowner Defendants' representation on the Application was not a material misrepresentation. First, defendants argue that Homeowner Defendants' statement was true, because Winston was not located at the property to be insured at the time they filled out their Application. This argument is unavailing, however, because the Application asked if the Homeowner Defendants "owned or kept" a dangerous dog. ((DE 59-6, 61-7) at 3). Whether or not Homeowner Defendants kept Winston at the insured property, they still owned him at the time they were applying for insurance. (Examination Under Oath of Jill Surprenant (DE 59-1, 61-1) at 9:6-15, 12:5-25, 13:1-10). To infer that the word "own" suggests anything other than its plain meaning "is so tenuous that it rests merely upon speculation and conjecture." Lovelace, 681 F.2d at 241.

Defendants next seek to excuse the conduct of Homeowner Defendants based on the conduct of Angermeier. They argue Angermeier filled out the Application, not Homeowner Defendants, and thus Homeowner Defendants did not make any representations. They also argue Angermeier advised Homeowner Defendants they were allowed to represent they did not own or keep a mastiff if they did not have it on the insured property. (Affidavit of Holly Angermeier (DE 59-12, 61-8) ¶¶ 6-7). These arguments fail. Homeowner Defendants adopted the representations made in the

Application when they executed the document, even if Angermeier drafted the application. Goodwin, 332 N.C. at 330-31; Luther, 191 N.C. App. at 145. Moreover, even if Homeowner Defendants honestly believed Angermeier that they could represent they did not own Winston because he was not presently at the insured property, an innocent mistake does not cure a material misrepresentation. Thomas-Yelverton Co., 238 N.C. at 282; Tharrington, 115 N.C. App. at 128.

Finally, defendants argue that Homeowner Defendants were not required to update their representations in their Application, that the Application could only void the policy issued by plaintiff for 2013-2014, and that by issuing subsequent policies, any misrepresentations by Homeowner Defendants in their Application were cured.

Defendants do not cite any North Carolina case law in support of its position that a material misrepresentation on an application for insurance is cured by renewal of an insurance policy. The court finds this interpretation of North Carolina law too narrow. The North Carolina General Statutes provide that "statements or descriptions in any application for a policy of insurance, . . . unless material or fraudulent, will not prevent a recovery on the policy." N.C. Gen. Stat. § 58-3-10. The statute does not by its terms address whether a misrepresentation in an application for insurance can void a renewed policy. Where North Carolina courts have addressed the effect of renewal, they presume that renewal of a policy does not change the terms of the policy. See, e.g., Setzer v. Old Republic Life Ins. Co., 257 N.C. 396, 403 (1962); N. River Ins. Co. v. Young, 117 N.C. App. 663, 670 (1995). Furthermore, an insurer is "under no duty, legal or equitable, to question the truth of the applicant's statements or, absent facts sufficient to put it on inquiry, to conduct an investigation to determine the truth or falsity thereof." Swartzberg v. Reserve Life Ins. Co., 252 N.C. 150, 155-56, (1960).

In light of the foregoing principles, since the terms of Homeowner Defendants' Insurance

Policy were based on the Application wherein they stated they did not have dangerous dogs, and the Insurance Policy issued by plaintiff and renewed by plaintiff was premised on this representation, Homeowner Defendants' statements in the Application constitute a material misrepresentation applicable to the policy in effect at the time of defendant K.M.'s injury.[3] Defendants' argument that the Homeowner Defendants' policy did not have an Animal Liability Endorsement demonstrates the ongoing effect of the misrepresentation as well. (UPC Animal Liability Endorsement (DE 59-15) at 1). The absence of such an endorsement, which provides coverage and exclusions for animals and also expressly notes that mastiffs are not eligible for coverage under the policy, id., demonstrates that Homeowner Defendants' misrepresentation had an ongoing, material effect on their Insurance Policy.

2. Fraud, Waiver & Estoppel

Defendants argue that plaintiff is estopped from voiding the Insurance Policy because their agent, Don Bullard Insurance, knew of the material misrepresentations made through their subagent, Holly Angermeier. They further argue that no fraud was committed on plaintiff, and that Angermeier and Don Bullard Insurance waived the UPC Animal Liability Underwriting Guidelines prohibiting coverage of mastiffs. For the reasons statement below, there is no genuine issue of material fact that Homeowner Defendants committed fraud in the representations made in their Application, thereby precluding a waiver.

"Even material misrepresentations in applications for insurance do not void the policy if the insurer knew the facts surrounding the misrepresentations at the time it accepted the application and

---

[3] Even assuming each policy is to be treated differently, case law cited by defendants suggests that Homeowner Defendants should have disclosed in subsequent policy terms that Winston was then at the residence to obtain liability coverage in subsequent policies. See Ormond v. Mut. Life Ass'n, 1 S.E. 796, 800 (N.C. 1887) ("[A]ny material change in the condition of the health of the insured, intermediate and before the consummation of the contract by payment of the premium, should be communicated to the company.").

issued its policy based thereon." Ward v. Durham Life Ins. Co., 325 N.C. 202, 210 (1989). "[A]ny knowledge of an agent or representative, while acting in the scope of the powers entrusted to him, will, in the absence of fraud or collusion between the insured and the agent or representative, be imputed to the company, though the policy contains a stipulation to the contrary."[4] Id. at 211; N. Nat. Life Ins. Co., 311 N.C. at 71-72. To establish fraud, a plaintiff must show "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Forbis v. Neal, 361 N.C. 519, 526 (2007) (quoting Ragsdale v. Kennedy, 286 N.C. 130, 138 (1974)).

Here, Homeowner Defendants' acts and omissions establish the elements of fraud. As discussed above, Homeowner Defendants made a material misrepresentation. The misrepresentation was reasonably calculated to deceive plaintiff in to believing that Homeowner Defendants did not own a mastiff. The representation did in fact deceive because plaintiff issued an insurance policy that it would not have if it had known Homeowner Defendants owned a mastiff. And plaintiff has suffered injury from this misrepresentation because plaintiff now faces a claim for liability coverage under the policy in question.

Finally, Homeowner Defendants intended to deceive plaintiff. Angermeier advised Homeowner Defendants that they would have to be insured by another company because of their breed of dog. (Angermeier-Surprenant email (DE 59-5, 61-5) at 1). Homeowner Defendants responded that they would "take our chance" with plaintiff and the dog would not "be there during any inspection." (Angermeier-Surprenant email (DE 59-5, 61-5) at 1). As discussed above, Homeowner Defendants signed their Application, which represented they did not own or keep any

---

[4] The court assumes without deciding that Don Bullard Insurance Company and Holly Angermeier were agents of plaintiff when obtaining a suitable insurance policy for Homeowner Defendants.

dangerous dogs. Homeowner Defendants were also aware that having their mastiff present during an inspection would preclude them from insurance coverage. (Examination Under Oath of Jill Surprenant (DE 59-1; 61-1) at 21:17-22:6). Finally, Angermeier advised Homeowner Defendants that if they ultimately brought their dog to the property, "they needed to call to get a change of company so that there wasn't an issue if there was some type of bite claim that happened so that it would be covered." (Deposition of Holly Angermeier (DE 59-4, 61-2) at 34:10-35:15). Despite being advised that they would need call Don Bullard Insurance Company to get a different insurance policy with a different company, Homeowner Defendants did not call after bringing their mastiff to their new home. (See Examination Under Oath of Jill Surprenant (DE 59-1, 61-1) at 28:5-29:24; Deposition of Holly Angermeier (DE 59-4, 61-2) at 34:12-35:15, 47:3-5). Taken together, the facts as presented show that plaintiffs were aware that plaintiff would not insure their dog breed, and that they intended to deceive plaintiff. Thus, Homeowner Defendants defrauded plaintiff.

Defendants argue that plaintiff waived its right to challenge the misrepresentation contained in Homeowner Defendants' Application. They argue that plaintiff, through its agents Don Bullard Insurance Company and Holly Angermeier, knew that Homeowner Defendants had a mastiff and therefore waived any objection to liability coverage. Defendants' argument fails because plaintiff did not know that Homeowner Defendants had ultimately moved to North Carolina with their mastiff. At the outset, the Surprenants represented to Angermeier that they did not expect Winston to live much longer, and that he would not be moved to North Carolina any time soon. (Angermeier-Surprenant email (DE 59-5, 61-5) at 1; Deposition of Holly Angermeier (DE 59-4, 61-2) at 47:3-5). The inspection of Homeowner Defendants' property by National Risk Services, which was provided to plaintiff, ultimately did not note that any dogs were observed on the property. (NRS Inspection Report (DE 59-8, 61-9)). Moreover, Homeowner Defendants did not communicate any

further with Don Bullard Insurance Company or Angermeier that they ultimately brought their mastiff with them to North Carolina, and that they needed a new insurance policy that accounted for their dog. (See Examination Under Oath of Jill Surprenant (DE 59-1, 61-1) at 28:5-29:24; Deposition of Holly Angermeier (DE 59-4, 61-2) at 34:12-35:15, 47:3-5). Plaintiff cannot be expected to have knowledge of a misrepresentation where Homeowner Defendants commit acts and omissions to deceive it and its agents. See Swartzberg, 252 N.C. at 155-56. Defendant's waiver argument fails in light of Homeowner Defendants' fraud.

Ultimately, it would be unfair to plaintiff if Homeowner Defendants were allowed to disclaim a risk knowing the risk existed at the time of their Application, then allowed to claim under their Insurance Policy for liability arising from that same risk at a later time, especially where plaintiff specifically asked whether such a risk existed. See, e.g., Stipcich v. Metro. Life Ins. Co., 277 U.S. 311, 317 (1928) ("If, while the company deliberates, [the insured] discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure."). For these reasons, the court grants plaintiff's motion for summary judgment, and denies defendants' motion for summary judgment.

**CONCLUSION**

Based on the foregoing, the court GRANTS plaintiff's motion for summary judgment (DE 60), and DENIES defendants' motions for summary judgment. (DE 58). The court ADJUDGES AND DECLARES that Homeowner Defendants' Insurance Policy provides no coverage for the claims asserted by the defendants, as such policy is void and unenforceable under North Carolina law with respect to defendants' claims. The clerk is DIRECTED to close this case.

SO ORDERED, this the 27th day of September, 2018.

LOUISE W. FLANAGAN
United States District Judge